J. T. BRADSHER v. LAVINIA HIGHTOWER.

*Issues—Mortgagor and Mortgagee—Vendor and Vendee—Adverse Possession—Burden of Proof—Bona Fide Purchaser.*

1. It is not error to refuse to submit an issue tendered when those submitted by the court are sufficient to admit evidence of their several contentions and to meet the merits of the issues raised by the pleadings.

2. One who holds possession of land under a bond for title does not hold adversely to his vendor in the absence of some hostile act on the part of the vendee under a claim of right with intent to assert such right against the vendor.

3. In such case, the burden of proving adverse possession is on the vendee.

4. A devisee of land, given as a bounty by a testator, is not a purchaser for value, but takes only the interest of the testator, subject to all equities.

CIVIL ACTION, on a bond for title to land brought on the ground that the defendant devisee of the vendee had failed to pay the purchase-money, tried before *Starbuck, J.,* and a jury, at August Term, 1895, of CASWELL Superior Court.

On the pleadings filed the following issues were tendered by the plaintiff: "First. Did the testator of defendant con-

tract to purchase the land described in the complaint from the plaintiff for the sum of $210 ?    Second.  Has the said purchase-money been paid ?    If not, how much is due ? Third.  Is the action of plaintiff barred by the Statute of Limitations ?"  Issues tendered by the defendant :  " First. Was the deed of Mary B. Johnston to the plaintiff, dated the  14th  of  February,  1879,  executed  by  her  under false and fraudulent representations by the plaintiff that said deed was a mortgage to secure the payment of $210, that day loaned her by plaintiff ?    Second.  Has the defendant been  in  the  actual  adverse  possession  of  the  land described in the complaint, under known metes and bounds, under color of title, for seven years prior to the issuing of the summons in this action ?    Third.  Is plaintiff's claim barred by the Statute of Limitations ?"    To the refusal of the court to submit the second issue tendered by the defendant, the defendant excepted, the court holding that the issue was embraced in the fifth issue submitted.  His Honor submitted the following as the issues, to which there was no objection :   " First.  Was the deed of Mary B. Johnston to the plaintiff, dated the 14th day of February, 1879, executed by her under the false and fraudulent representation of the plaintiff that said deed was a mortgage to secure the payment of $210, that day loaned her by plaintiff ?  'No.' Second.  Did the testator of the defendant contract to purchase the land described in the complaint from the plaintiff for the sum of $210 ?  .'Yes.'    Fourth.  Has said purchase money been paid, and, if not, how much is due ?   ' No ; due, $210, with interest from February 13, 1880.'   Fifth. Is the action of plaintiff barred by statute of limitations ? 'No.' Sixth. Was defendant induced by the fraudulent representations of the plaintiff to enter into said contract ? 'No.' " Upon the close of the evidence, the defendant tendered the following issues :   " Was the deed of February 14, 1879,

and the obligation of the same date, intended by the parties to be a mortgage to secure the payment of $210, that day loaned by plaintiff?" His Honor refused to submit the issue, and the defendant excepted.

The plaintiff, in order to maintain his contention, offered the following evidence:

First. A deed executed by Mary B. Johnston, dated the 14th day of February, 1879, proven January 2, 1881, and recorded November 21, 1885, being an absolute conveyance to J. T. Bradsher in fee.

Second. R. P. Smith, attesting witness, introduced by plaintiff, testified that he was the subscribing witness to the deed and the contract to convey, both dated February 14, 1879, which said contract is in the following words:

"North Carolina, Caswell County. Whereas, J. T. Bradsher sold a certain tract of land to Mary B. Johnston, being the land she now lives on, containing by estimation (120) one hundred and twenty acres, more or less, I, J. T. Bradsher, bind and obligate myself in the sum of $350 (three hundred and fifty dollars) to make her a good title to the land mentioned above, when she pays the principal money, being ($210) two hundred and ten dollars, with interest at 8 per cent. and taxes, and all other costs which may accrue, &c., on or before the 1st day of January, 1881; and, if she fails to comply with the above obligation, it will be null and void, and otherwise it will be in full force and effect. Whereunto I set my hand and seal, this, the 14th day of February, 1879. James T. Bradsher. [Seal.]

"Witness: R. P. Smith."

The witness further testified: That, at the time of the signing of the deed, Mary B. Johnston was old, and that she made the mark to the deed. That witness did not know whether she could write. That witness was sent for to witness the paper. That Bradsher loaned Mary B.

118—26

Johnston $210, to finish paying for one-half of the land, which she had first bought at $350. That Bradsher took an absolute deed as security, and executed to Mary B. Johnston the bond to make title. That Bradsher was never in the possession, but that Mary B. Johnston was then in actual possession of it; and that her daughter, the defendant, had been in actual possession ever since her death. " Before this suit was brought, the plaintiff sent for me. He said he did not wish to throw the defendant out of the land, and asked me to see if defendant would borrow money from me, and pay the plaintiff, and give a mortgage on the land to secure me." Witness had no money to lend, and declined to do this. The land was worth at date of deed $600. Mary B. Johnston lived about two years after deed. That the plaintiff never exercised any control over the land, or had it in possession. " Mrs. Johnston sent for me to witness the execution of the papers, and I did so. After Mrs. Johnston died, I was requested by the defendant to look over her papers, and found the contract of sale, and advised defendant to take care of it; that it was the contract to reconvey." That defendant told witness some six or seven years ago that plaintiff objected to her selling timber from the land, and she complained of his objection, but afterwards sold timber.

The plaintiff here rested case, and the defendant offered the following evidence:

First. Receipt for $16.79, dated February 23, 1880.

Second. Will of Mary B. Johnston, devising the land to defendant.

Defendant then offered, as a witness in her behalf, H. F. Brandon, who testified as follows: That he qualified as executor of Mary B. Johnston, and gave the notice of his qualification in the newspapers in the county, and by handbills, for all creditors to present the claims against the

estate, and that plaintiff never presented his claim; that Mrs. Johnston was ignorant, and could not read or write; that in his opinion the land was worth in 1879 from six to seven dollars per acre.   J. A. Long, a witness for defendant, testified:   That he was counsel for Mrs. Johnston in 1879, when she bought the half interest in the land.   At the time, her health was poor, and she was confined to her bed.   That the plaintiff, at the term to which this suit was brought, asked witness what his client was going to do.   Said he loaned her the $210, to help pay for the half interest, and that all he wanted was his money.   That Mary B. Johnston paid $350 for one-half interest, and that the object was to give him a mortgage to secure the loan.   That it was more convenient for him to take an absolute deed and to execute a bond to make title, and that such was his custom.

After the conclusion of the evidence, his Honor instructed the jury, if they believed the evidence, to answer the issues as set out in the record; and the jury so answered.   To the instruction the defendant excepted.   It was agreed, if the fourth issue should be found in the negative, that the amount due the plaintiff would be $210, with interest from February 13, 1880.   His Honor then rendered judgment directing the land to be sold for the payment to plaintiff of $210, and interest from February 24, 1880, allowing the defendant 60 days in which to pay said sum.   From this judgment defendant appealed.

*Messrs. Graham & Graham* and *A. L. Brooks*, for plaintiff.

*Mr. J. A. Long*, for defendant (appellant).

FAIRCLOTH, C. J.:   Both parties excepted to the refusal of the court to submit issues tendered by them.   These exceptions were properly overruled, as we see that the

issues submitted by the court were sufficient to admit evidence of their several contentions and to meet the merits of the issues raised by the pleadings.    There are no questions of the rights of creditors in the case, nor any question of fraud or fraudulent misrepresentation, as the jury have said by their response to the first issue that there was none.

The whole matter then is limited to the dealings between the parties, treating Mary B. Johnston for the present as the defendant.    The rights of the defendant Hightower (daughter and devisee of Mary B. Johnston) will be considered later.

It was competent for the parties to make the deed absolute in form, but to be held as a security for the money loaned by the plaintiff, subject to be void upon payment of the debt and to be cancelled.    The burden of showing this to have been the intention rested upon the party so alleging.    It was equally competent for the parties to have agreed that the deed should be absolute and irrevocable, with a simultaneous agreement in writing that upon payment of the agreed price the plaintiff should convey and make title of the same land to the defendant, and the jury, in response to the second issue, find that the testatrix of the defendant did contract to purchase the land at the price of $210, and the plaintiff executed and delivered his bond for title accordingly, which appears in the record.

The testatrix remained in possession until her death in 1880 or 1881, and the defendant has been in possession ever since.    On February 23, 1880, a small payment was made by the testatrix on the contract.    This contract established the relation of vendor and vendee, similar in many respects to that of mortgagee and mortgagor.    The possession of defendant's testatrix was not hostile to the claim of the plaintiff and could not be an adverse possession, so as to put the Statute of Limitation in operation

without some act on the part of the vendee under a claim of right, with intent to assert such claim against the vendor and thereby give him notice that any further delay in the assertion of his right to possession or to foreclose the contract would be at his peril. The burden of showing such a hostile attitude towards the vendor would devolve upon the party so alleging it. No proof of such possession or action was shown to exist on the part of the defendant or her testatrix. The Statute of Limitations does not expressly mention this trust relation between vendor and vendee, and it could be only included under Section 158 of *The Code*, and we have held that it would then be allowed only where the possession was adverse, or where it was necessary to prevent some wrong or gross injustice. To obtain assistance from a court of equity the parties must observe the maxim that " he who seeks equity must do equity "—a principle based upon conscience and good faith.

The defendant, as devisee of her mother, was in possession before the deed was registered, and, so far as appears, before she had notice of the bond for title, and she claims to have the rights of a purchaser without notice. The difficulty in that position is that she is not a purchaser for *value*, and has no more rights than her mother had, which was an equitable estate without the legal title, whereas the plaintiff has the legal estate and the elder and stronger equity, because of a valuable consideration paid to her testatrix. *Inter partes,* deeds and contracts are binding without registration, and the defendant takes her mother's equity subject to prior equities with or without notice, with the same right of redemption. A purchaser at a sheriff's sale under a *fi. fa.* takes subject to all incumbrances on the property, whether he has notice or not, and whether he buys an equitable or legal estate, and this defendant certainly can have no better claim.

There are instances in which this Court would interfere and protect the defendant.    For instance, if the delay of à party to assert his claim should have been so long as to presume abandonment or any unfair dealing or gross injustice was present, the Court would see that the innocent party should not be disturbed.    As nothing of the kind appears here, however, we will not interfere with the judgment below.

Affirmed.