OTELIA CUNNINGHAM ᴇᴛ ᴀʟ. ᴠ. J. A. LONG ᴇᴛ ᴀʟ.

(Filed 28 November, 1923.)

**1. Trusts—Parol Trusts—Statute of Frauds.**

At common law, a trust in favor of a mortgagor of land may be engrafted upon the legal title acquired by the purchaser at the foreclosure sale by a parol agreement between them, that the latter should convey the legal title upon repayment by the mortgagor of the price such purchaser had paid, with the interest thereon to date of payment, and the seventh section of the statute of frauds requiring that a writing to that effect be signed by the parties, etc., being omitted from the statute in this State, is not in effect here, and such writing is not required, the matter standing as ⸳at common law.

**2. Same—Evidence.**

Evidence that before and after the foreclosure sale, under mortgage, the purchaser agreed with the mortgagor, a close personal friend of his, that he would bid in the property and hold the title for his benefit until he could repay the purchase price with interest thereon; that the price so paid was much less than the value of the lands; that the purchaser was wealthy and had declared that he had all the lands he wanted, and did not desire the lands for himself or family, is sufficient of facts and circumstances *de hors* the deed inconsistent with the idea of an absolute purchase to take the case to the jury upon the issue as to whether a parol trust had been established in the mortgagor's favor.

**3. Same—Questions for Jury.**

In order to establish a parol trust in lands, the question whether the evidence, if sufficient, is clear, cogent and convincing, is one for the jury.

**4. Same—Tender.**

In order to enforce a parol trust upon the title to lands, it is not necessary that an actual tender of the consideration should have been made, when it is made to appear that the holder of the legal title had refused to recognize the trust and would have refused to accept the tender had it been made.

**5. Trusts—Parol Trusts—Laches.**

*Held*, in this case there was evidence tending to show an express trust with an indefinite period for the redemption of the land, the subject of the trust, and there was nothing shown of record that concluded the plaintiff, on the ground of laches or unreasonable delay, from enforcing it.

APPEAL by plaintiffs from *Bond, J.,* at April Term, 1923, of DURHAM.

Civil action. J. S. Cunningham instituted the action on 27 March, 1920, and filed his complaint on or about 5 April following. His amended complaint was filed 4 November, 1921. He died on 4 April, 1922, and at the May term his heirs were made parties plaintiff.

In the amended complaint it is alleged that J. S. Cunningham was the owner of certain lands in Person County; that on 10 June, 1903,

and 5 June, 1905, he and his wife executed certain deeds of trust for a portion of said lands to W. W. Kitchin, trustee, for the purpose of securing certain indebtedness of said Cunningham; that on 30 March and 30 December, 1907, he and his wife executed other deeds of trust to J. S. Bradsher, trustee, to secure other indebtedness of said Cunningham; and that on 4 December, 1909, both trustees made sale of said lands and J. A. Long became the highest bidder for the several tracts at the aggregate price of $16,625. These allegations were admitted by the defendants.

Section 12 of the amended complaint is as follows:

"That on or about 1 November, 1909, and on other dates subsequent thereto, and prior to the purchase of the lands by J. A. Long, who was the lifelong friend of the plaintiff, in whom the plaintiff reposed absolute confidence, and who was under many and great obligations to said plaintiff, he agreed with plaintiff that he would buy the said land at the said trustee's sale and hold the same for plaintiff, and convey the same to plaintiff upon the repayment to him of the said purchase-money and interest, and said plaintiff agreed with J. A. Long that he would repay to him the purchase-money and interest; that the substance of said agreement was that said Long would purchase and hold said land in trust for plaintiff, and the plaintiff would repay him the said purchase-money and interest thereon. That said parol agreement was made by said J. A. Long in his office in the town of Roxboro, N. C." The defendants denied these allegations.

In answer to section 14 of the complaint the defendants admitted that they had received a letter from J. S. Cunningham written 14 February, 1920, which was "similar in substance" to the following:

"On 4 December, 1909, lands amounting to 2,043 acres, situated in Woodvale Township, Person County, on the waters of Hyco Creek, Gent's Creek, Story's Creek and Marlowe Creek, adjoining the lands of Mrs. Mollie Walters and the late C. S. Winstead, Walter Williams, W. M. Faulkner, George G. Moore, J. G. Rogers and others, were sold by J. S. Bradsher and W. W. Kitchin, trustees, under deeds of trust executed by me, for the aggregate price of $16,626. They were purchased by Mr. James A. Long, deceased, and are now held by his widow and heirs at law. Mr. Long purchased these lands under and in pursuance of a trust agreement with me, made before the sale, and afterward confirmed by him, that he would buy and hold the lands for me, and convey them to me, upon the repayment to him of the said purchase-money and interest. Mr. Long thus held the lands in trust for me, and they have descended to you subject to the said trust agreement. I now offer to repay to you, in such proportions as you may agree

amongst yourselves, the said purchase price and interest, without delay, and I demand that you shall, upon such payment, reconvey the said lands to me. I ask that you will inform me at once whether you will comply with my demand, and in what proportions the said purchase-money shall be paid to you. I have heretofore made this demand. I am sending a copy of this letter to each of you. I will thank you for an early reply."

The defendants admitted that they are the heirs of J. A. Long, who died intestate 12 April, 1915, but denied that the lands descended to them subject to the asserted trust, and further alleged in section 15 of the amended answer:

"It is admitted that only one of the defendants, to wit, J. A. Long, Jr., responded to said letter, and his reply stated that he would not convey said lands, but said letter was written by him on behalf of all of the defendants. And these defendants say that said J. A. Long, deceased, went into the possession of the lands referred to in the complaint and amended complaint filed herein very soon after 4 December, 1909, and remained in possession thereof until the day of his death, to wit, 12 April, 1915; and these defendants have been in the quiet, peaceable, open, notorious and adverse possession of said lands ever since the day of the death of the said J. A. Long, all to the knowledge of the plaintiff. That this action was not commenced until 27 March, 1920, nearly five years after the death of the said J. A. Long, and more than ten years after said lands were sold; that if there was an agreement existing between the plaintiff and the said J. A. Long, as alleged in the complaint and the amended complaint, this fact was, of course, known to the plaintiff during all of said last-mentioned period of time, and he could and should, in good conscience, have brought his action to enforce the performance of said alleged agreement before the death of the said J. A. Long, in order that he might have an opportunity to testify therein; and these defendants are advised and believe, and therefore allege, that the plaintiff has, by laches, forfeited his right to bring and prosecute this action, and that it would be inequitable to permit him to recover herein."

W. M. Cunningham testified as follows:

"My name is William Murray Cunningham. I now live with my family at Arden, N. C., but my home is in Danville, Va. I am a brother to the late Col. John S. Cunningham. I knew J. A. Long and knew him all my life. Some time during the latter part of August or in September, 1910, I was in Roxboro, N. C. On that visit to Roxboro I had a conversation with Mr. J. A. Long, now deceased. I had the conversation at the hotel in Roxboro. It was in the evening a little

while before supper. I did not hunt up Mr. Long, he came to me; he came up to the hotel. I was in the lobby when he came in. I had a conversation about the sale of my brother's land, the late John S. Cunningham. While I was in the lobby Mr. Long came up there and we got in a conversation—I came up from South Boston to Roxboro on some business and was stopping at the hotel and while I was up there Mr. Long came up there in the evening—how long before supper I do not exactly remember, and he spoke to me in the lobby and we talked along in general conversation, and he asked me if I had any business to attend to, and I told him 'No,' I did not have anything. And he said, well he would like to see me, and asked me to go on the porch and sit down and talk with him, and I did, and after talking for a while he said he was very much distressed about the Colonel's affairs. That was my brother; he always called my brother, John S. Cunningham, Colonel. He said that he was distressed at the Colonel's affairs and that he was glad to be in a position to help him. He told me he bought this land at the sale for Colonel Cunningham with the understanding that he would give Colonel Cunningham all the time he wished, and whenever he got ready to pay for it he could pay him. He stated that he did not care for the land; that the land was cheap and he and his sons had all the property they wished for, and he promised him none of the land would ever be sold. He stated that he was sorry that Mrs. Cunningham and her family had to leave and that he hoped they would soon get back their property; and he said he had told his family none of this property was to be sold, and he promised him all the time that his wishes would be carried out. He stated also that none of the timber would be sold off this place, and no timber should be cut except for the use on the property. At that time Mrs. Cunningham had not moved off the farm. I think they moved some time about December of the same year. I never heard anything about the relation between J. A. Long and Colonel Cunningham except that they were the best of friends. They visited each other. Mr. Long told me that he visited the Colonel's home a great deal and was never shown more hospitality than in the Colonel's home. I know the general reputation as to the means of J. A. Long. According to reputation, he was always supposed to be worth a half million.

"I know the lands that were owned before this sale by my brother, that 2,000 acres, pretty well. I had known that tract of land all my life. The land was worth $35 to $40 per acre in the latter part of 1909.

"The Colonel Cunningham home place, the old dwelling and mansion, was on this 2,000 acres. There was much timber. Right many creeks ran through it. There were seven or eight tenant houses and overseers'

34—186

houses on it. It was located five or six miles from the Atlantic and Danville Railroad, that being from the Colonel's home place, to Cunningham Station."

The following questions were propounded by the plaintiffs to the witness W. M. Cunningham, and the following answers were made by him thereto:

"Q. You stated that Mr. Long said Colonel Cunningham could get back the land whenever he paid him the money. Did he specify what money was to be paid? A. No, sir; he did not specify how much.

"Q. Did he specify what money? A. The amount of money loaned him on his farm?

"Q. The amount Mr. Long paid for it. A. Yes, sir."

It was admitted that J. S. Cunningham moved off the land in December, 1910, and that he and those claiming under him have not occupied it or received the rents and profits from it since that time.

At the close of the evidence the defendants moved to dismiss the action as in case of nonsuit. The motion was allowed, and the plaintiffs excepted and appealed.

·Pou, Bailey & Pou, Brawley & Gant, John W. Hinsdale, and Douglass & Douglass for plaintiffs.

W. D. Merritt, Luther M. Carlton, Brogden, Reade & Bryant, and Fuller & Fuller for defendants.

ADAMS, J. The object of the action is to establish a parol trust. The tracts of land described in the deeds were sold by the trustees on 4 December, 1909, and purchased by J. A. Long, under whom the defendants claim title. The plaintiffs allege that on or about 1 November, 1909, and at other times subsequent thereto, and prior to the sale, the purchaser agreed with J. S. Cunningham that he would buy the land in question at the trustees' sale and hold it for said Cunningham, and convey it back to him upon repayment of the purchase-money and interest; that said Cunningham agreed to repay this amount; and that by virtue of the agreement the purchaser accepted, and the defendants now hold the legal title in trust for the plaintiffs.

The defendants deny that such agreement was made, and insist that the purchaser acquired the legal title under absolute conveyances, having done nothing which was inconsistent with complete ownership, and that they have succeeded to his interest in the property conveyed.

The alleged agreement was in parol. It was not essential that it be in writing. At common law it was not necessary that a trust should be declared in any particular way; consequently it was provided by the seventh section of the statute of frauds that all declarations or crea-

tions of trusts or confidences in any lands, tenements or hereditaments should be manifested and proved by some writing signed by the party enabled by law to declare such trusts, or by his last will in writing. But this section has not been adopted in North Carolina, and, as there is no other statute which requires the declaration of a trust to be in writing, the matter stands as at common law. Therefore such declaration, as *Chief Justice Pearson* said in *Shelton v. Shelton,* 58 N. C., 292, may "be made by deed or by writing, not under seal, or by mere word of mouth." *Foy v. Foy,* 3 N. C., 131; *Strong v. Glasgow,* 6 N. C., 290; *Cook v. Redman,* 37 N. C., 623; *Riggs v. Swann,* 59 N. C., 119; *Ferguson v. Haas,* 64 N. C., 773; *Shields v. Whitaker,* 82 N. C., 516; *Pittman v. Pittman,* 107 N. C., 159; *Sykes v. Boone,* 132 N. C., 200; *Gaylord v. Gaylord,* 150 N. C., 227; *Jones v. Jones,* 164 N. C., 321; *McFarland v. Harrington,* 178 N. C., 189.

While not directly assailing this principle, the defendants say that the plaintiffs have undertaken to engraft a trust upon deeds purporting to convey a fee; that such trust must be established by evidence *de hors* the deeds; that the alleged declarations of the purchaser are not supported by such evidence, and that the nonsuit was properly granted.

In *Clement v. Clement,* 54 N. C., 184, the object of the bill was to convert the defendant into a trustee for the plaintiffs on the ground that the defendant's intestate had purchased a slave named George for and with the money of Lawrence Clement, under whom they claimed, and had taken the conveyance to himself; and the Court said that the intention must be established, not merely by proof of declarations, but, in addition, by proof of facts and circumstances *de hors* the deed inconsistent with the idea of an absolute purchase by the party for himself. See, also, *Hinton v. Pritchard,* 107 N. C., 128; *Hemphill v. Hemphill,* 99 N. C., 436; *Briggs v. Morris,* 54 N. C., 193; *Brown v. Carson,* 45 N. C., 272. In *Williams v. Honeycutt,* 176 N. C., 103, it was held that the declarations of a purchaser made after the sale and transmission of the legal title were competent to prove the previous agreement; and in *Ferguson v. Haas, supra,* it is suggested that it would be hard to conceive of a case which could be founded on words only, without some corroborating acts and circumstances.

As we understand it, the evidence in the instant case discloses several circumstances tending to corroborate the alleged declarations of the purchaser. Among other circumstances are these: J. S. Cunningham was in financial straits; he had executed several deeds of trust to secure his creditors; he had found it difficult to raise money; the purchaser of the land was wealthy; he was Cunningham's friend; the land sold by the trustees embraced 2,043 acres, worth from $70,000 to $80,000; it was bought at the sale for $16,625; Cunningham remained on the

land until December, 1910; the purchaser did not care for the land; and it was not to be sold and no timber was to be cut except for keeping up the farm. Of course, as to the merits of the evidence we have nothing to say; but when we consider it in the light most favorable to the plaintiffs, we regard it of sufficient probative force to be considered and passed upon by the jury. The evidence, it is true, must be clear, cogent, and convincing, but whether it meets this requirement is a matter for the jury and not for the court. *Cobb v. Edwards,* 117 N. C., 245; *Lehew v. Hewitt,* 130 N. C., 22; *Avery v. Stewart,* 136 N. C., 426; *Cuthbertson v. Morgan,* 149 N. C., 72; *Hendren v. Hendren,* 153 N. C., 505; *Taylor v. Wahab,* 154 N. C., 220; *Boone v. Lee,* 175 N. C., 383; *Lefkowitz v. Silver,* 182 N. C., 339.

The defendants further contend that in any event it was not incumbent upon them or their ancestor to reconvey the land until the purchase price was paid, and that neither payment nor tender had been made. In the letter written the defendants by J. S. Cunningham is the following language: "I now offer to repay you, in such proportions as you may agree amongst yourselves, the said purchase price and interest without delay, and I demand that you shall upon such payment reconvey the said lands to me." It is admitted that J. A. Long answered this letter on behalf of all the defendants, and declined the offer and refused to reconvey the land. Under these circumstances a more formal tender of the purchase-money would have been idle, for obviously it would have accomplished nothing. A tender is not necessary when it is reasonably certain that it will be refused. *Phelps v. Davenport,* 151 N. C., 22; *Gallimore v. Grubb,* 156 N. C., 575; *Gaylord v. McCoy,* 161 N. C., 686; *Headman v. Comrs.,* 177 N. C., 263.

The defendants interpose the additional objection that J. S. Cunningham made no assertion of his claim until about five years after the death of J. A. Long, the purchaser, and that it would be inequitable for this reason to enforce the alleged trust; and in support of this position they rely on the doctrine stated *In re Dupree's Will,* 163 N. C., 256, and in *Coxe v. Carson,* 169 N. C., 132. In the first of these cases it is said that after a will had been regularly proved in common form the right to file a caveat prior to 1907 (Public Laws, ch. 862) was forfeited by acquiescence or unreasonable delay, and while the time required at common law for the operation of the principle was not definitely fixed, twenty years was the period generally prevailing. And in *Coxe's case* it was held that without reference to the statute of limitations, those who had delayed for more than thirty years to assert their claim to land said to have been held upon a parol trust would be deemed to have lost their rights. Neither of these cases is necessarily decisive of the question here presented. In the instant case there is evidence tending

to show an express trust with an indefinite period for the redemption of the land; and in the record as it now appears we find nothing which concludes the plaintiffs on the ground of laches or unreasonable delay. The statute of limitations was not pleaded.

The judgment of his Honor dismissing the action as in case of non-suit is reversed to the end that the controversy be determined as provided by law.

Reversed.