STEPHEN A. MILLER, MINNIE M. ASBURY, HARRIET M. WATTS, AND LOUISE MILLER v. G. L. MILLER, EXECUTOR OF WILL OF JASPER MILLER, DECEASED ; G. L. MILLER, INDIVIDUALLY ; CORA P. MILLER AND CARRIE A. PETTY.

(Filed 11 March, 1931.)

1. **Trusts A b—In this case held: resulting trust was created to the use of the heirs at law of deceased wife.**

Where a wife conveys land owned by her to a corporation in consideration of shares of stock of the corporation, and she dies owning such stock, and after her death the corporation is dissolved, and her husband, who was entitled to only one-sixth of her estate as distributee, transfers the stock back to the corporation as consideration for a deed to the land from the corporation to him in his own right, *Held:* a resulting trust attaches to the land in favor of the heirs at law of the deceased wife for the other five-sixths interest.

2. **Limitation of Actions B a—Right of action to enforce resulting trust accrues at date of deed to wrongdoer.**

Where a husband uses the funds of his deceased wife to purchase land, creating a resulting trust in favor of her heirs, the right of action of the heirs accrues at the date of the execution of the deed to the husband purporting to put title in him in his own right, and the heirs of the wife will be barred from bringing action after ten years from the execution of the deed unless the statute is prevented from running by absence or disability.

3. **Limitation of Actions B e—Action in this case held not barred by ten-year statute, the defendant being out of State part of period.**

Where a cause of action to enforce a resulting trust has existed for more than ten years, but subtracting the length of time the trustee thereof had been out of the State, the elapsed time is less than ten years, the cause of action is not barred by the ten-year statute. C. S., 411.

4. **Estoppel C a—Estoppel in this case rested solely on grounds that plaintiffs kept silent, and evidence of estoppel held insufficient.**

Where in an action to enforce a resulting trust the heirs of the first wife of the trustee claim adversely to the interest of the second wife who had loaned her husband money, and there is no evidence tending to show that the second wife loaned the money by virtue of any representations as to the ownership of the land sought to be impressed with the trust, *Held:* the plea of estoppel as against the heirs not participating in the

wrongful act rests exclusively on the theory that they stood by in silence, and evidence of estoppel in this case is insufficient to warrant a submission of the issue to the jury.

5. **Estoppel C b—In this case held: son was estopped from setting up interest as heir by participating in breach of trust.**

Where a husband, in possession of stock in a corporation as administrator of his deceased wife, transfers the stock to the corporation as consideration for a deed to lands from the corporation, and his son, an heir of the deceased wife and an officer of the corporation, signs the deed as such officer and acquiesces in the enjoyment of the property by the husband, *Held:* in an action by the heirs of the deceased wife to impress the property with a resulting trust in their favor, the son is estopped from setting up his interest, he having actually participated in the breach of trust by the husband.

CIVIL ACTION, before *Sink, Special Judge,* at November Term, 1929, of MECKLENBURG.

Minnie Fair Miller, wife of Jasper Miller, owned a certain lot in the city of Charlotte. On 24 February, 1911, she conveyed said land to a corporation known as Jasper Miller & Sons Company, and received in payment for said property certain shares of stock in said corporation. In September, 1915, Minnie Fair Miller died intestate, owning 191 shares of common stock of said corporation out of 200 shares total outstanding issued stock. Her husband, Jasper Miller, qualified as administrator of her estate on 20 September, 1915. At the time of her death Minnie Fair Miller left her surviving, her husband, Jasper Miller, and the following children, to wit, Stephen A. Miller, Minnie M. Asbury, Harriet M. Watts, Carrie Louise Miller, and G. L. Miller. Thereafter on 20 September, 1916, Jasper Miller, administrator, filed a final account as administrator, which is recorded in Record of Settlements 6, at page 52, and is as follows: "Having qualified as administrator of the estate of Minnie Fair Miller, and having paid all claims presented against said estate, and being the sole beneficiary, I have retained in my possession the residue of said estate." At the time said final account was filed all of the children of Minnie Fair Miller were of age. Thereafter proceedings were taken to dissolve the Jasper Miller & Sons corporation, and on 11 May, 1918, the corporation, through Jasper Miller, president, and G. L. Miller, secretary, executed and delivered to Jasper Miller a deed in fee simple for the property in controversy. This deed was also signed by G. L. Miller and Jasper Miller as directors of the company. Jasper Miller surrendered to the corporation the shares of stock formerly owned by Minnie Fair Miller, which apparently constitutes the only consideration for said deed.

Subsequently Jasper Miller married the defendant, Cora P. Miller, and it is admitted in the pleadings that on or about .... June, 1918, the said Jasper Miller removed his residence to the State of Virginia and

continuously resided out of the State of North Carolina from June, 1918, until February, 1923.

After the death of Minnie Fair Miller the corporation borrowed $6,000 from the Life Insurance Company of Virginia and executed a mortgage upon the land in controversy to secure said indebtedness. On 20 December, 1919, Jasper Miller borrowed from his wife, the defendant, Cora Miller, the sum of $4,500 and executed to her a note for said amount. It was alleged by the defendant, Cora Miller, that the proceeds of this loan were used to pay off and discharge the deed of trust held by the Life Insurance Company of Virginia.

Jasper Miller died 7 April, 1928, leaving a last will and testament appointing his sons, G. L. Miller and Stephen Alexander Miller, executors of said will. The defendant, Cora Miller, dissented from said will, and her dower has been assigned in other real estate. However, the widow alleges that there was a balance of $2,545 due her on note above referred to, and it is alleged that on 10 September, 1928, she reduced said claim to judgment in the Superior Court of Mecklenburg County. This action was instituted on 5 July, 1929, the plaintiffs claiming in substance that Jasper Miller held said land in trust for his children, and that they were tenants in common thereof. The widow, upon the other hand, asserts and contends that the plaintiffs are estopped from setting up any claim for said land, and that their claims are barred by various statutes of limitation.

At the conclusion of plaintiffs' evidence there was judgment of nonsuit and the plaintiffs appealed.

*Walter Clark for plaintiffs.*
*Bridgers & Orr and Thaddeus A. Adams for Carrie A. Petty and Cora P. Miller.*
*J. H. McLain for G. L. Miller, executor.*

BROGDEN, J. Substantially the case is this: A married woman, Minnie Fair Miller, dies, intestate, leaving a husband and five children. She owns 191 shares of stock in a corporation, of which her husband is president. Her husband qualifies as administrator and files a final report in 1916, stating that he has paid all debts, and that as he is the sole distributee of the personal property of his wife, takes possession of said stock, claiming title thereto in his own right. Thereafter he surrenders the stock to the corporation issuing the same and takes in return therefor a deed in his own name for all real estate owned by the corporation, which is dissolved. In 1918 he remarries and moves to Virginia, remaining there until 1923, when he returns to North Carolina, and dies in 1928, leaving a last will and testament. His second wife dissents from the will and has her dower allotted in property other than

that in controversy. At the time of his death he owes his second wife $2,545, for which she took judgment in 1928, after the death of her husband. On 5 July, 1929, the heirs at law and distributees of the first wife, Minnie Fair Miller, institute an action against the second wife, the executor, and another, alleging that they are tenants in common of the real estate which was purchased with the stock owned by their mother.

The following questions of law arise upon the foregoing facts, to wit:

1. What rights, if any, have the children of Minnie Fair Miller in and to the property purchased by her husband, Jasper Miller, with stock belonging to her at the time of her death?

2. Are the claims of the children of Minnie Fair Miller barred by the statute of limitation?

3. Are the children of Minnie Fair Miller estopped to assert any claim in and to said property?

When Jasper Miller qualified as administrator of the estate of his wife, Minnie Fair Miller, he thereupon became the trustee of an express trust. *Grant v. Hughes,* 94 N. C., 231. When he filed his final account on 20 September, 1916, and took the stock belonging to his wife under a claim of right and exclusive ownership for his own benefit, this constituted a disavowal of his trust. *Rouse v. Rouse,* 167 N. C., 208; *Rouse v. Rouse,* 176 N. C., 171. Under the statute of distribution in force at the time said final report was made, Jasper Miller was entitled to only one-sixth of the personal property of his deceased wife. Consequently, during the year 1918, when he took said stock belonging to the children of Minnie Fair Miller and purchased land from the corporation and took title thereto in his own name, a resulting trust was created in favor of the children or distributees of Minnie Fair Miller. This principle of law was expressed in *King v. Weeks,* 70 N. C., 372, where it is written: "A purchase by a man in his own name, with funds in his hands in a fiduciary capacity, creates a resulting trust in favor of those whose money is thus employed; as in case of· a trustee, a partner, an agent for purchase, an executor, a guardian, the committee of a lunatic, and the like." *Norton v. McDevit,* 122 N. C., 755; *Springfield Tire Co. v. Lester,* 190 N. C., 411; *Marshall v. Hammock,* 195 N. C., 498. Therefore, under the law, as written, the land in controversy was impressed with a resulting trust in favor of the children of Minnie Fair Miller.

The next question of law requiring consideration is whether the statute of limitation operates as a bar to the claim of said children. It is now firmly established that the ten-year statute of limitation is applicable to the facts disclosed by this record and the statute began to run in September, 1916, when Jasper Miller, administrator of the estate of his wife, disavowed his trust and took possession of her property in his own right and under a claim of exclusive ownership.

McIntosh North Carolina Practice & Procedure, p. 153; *Nunnery v. Averitt,* 111 N. C., 394; *Edwards v. Lemmond,* 136 N. C., 331; *Marshall v. Hammock,* 195 N. C., 498. Thus, the claim of the children of Minnie Fair Miller would be barred by the statute except for the application of C. S., 411. It is admitted that Jasper Miller left the State of North Carolina in June, 1918, and did not return until February, 1923. In other words, he was absent from the State approximately four years and seven months. During such absence the statute was suspended, so that it has run against the claims asserted for a period of approximately five years and four months. Hence, the claims of the children of Minnie Fair Miller are not barred by the statute of limitation.

The last question of law is whether the children or heirs at law of Minnie Fair Miller are estopped to assert any claim to said land. This suit is not between the heirs at law or children of Minnie Fair Miller and Jasper Miller. If so, perhaps a different rule of law would apply. In reality, the suit is an action by the heirs at law or children of Minnie Fair Miller against the second wife and widow of Jasper Miller, who is a creditor of his estate to the amount of $2,545. It does not appear in the record that there are any other creditors or that it is necessary to sell the property in controversy to make assets. There is no evidence tending to show that Cora Miller loaned money to her husband, Jasper Miller, by virtue of any representation made by him as to the ownership of said property. Hence, as to all interested parties, except G. L. Miller, estoppel must rest exclusively upon the theory that the children of Minnie Fair Miller stood by in silence for a period of five years and eight months. A careful examination of the record fails to disclose evidence of estoppel warranting the submission of an issue to a jury. But the defendant, G. L. Miller, stands upon a different footing. In 1918, when the corporation made the deed to Jasper Miller in consideration of stock which he wrongfully held as administrator of his wife, G. L. Miller was secretary-treasurer and director of the corporation. As such secretary he signed a warranty deed in behalf of the corporation, and, therefore, actually participated in the breach of trust committed by Jasper Miller. Consequently he acquiesced in the enjoyment of the property by his father, Jasper Miller, under a warranty deed, which instrument was totally inconsistent with the claim or demand now made by him that said property was impressed with a trust in his behalf. *Mask v. Tiller,* 89 N. C., 423; *Marshall v. Hammock,* 195 N. C., 498.

The result is that Jasper Miller owned one-sixth of said property in his own right, which is subject to the payment of his debts, and as against the claim of the widow or other creditors, G. L. Miller is estopped to assert his claim in and to one-sixth of said property.

Reversed.