NAOMI TEACHEY AND HUSBAND, LEON TEACHEY; RUTH CRUMPLER
AND HUSBAND, ALBERT CRUMPLER; NANNIE SMITH AND HUSBAND,
J. H. B. SMITH; VARA MOORING AND HUSBAND, W. P. MOORING;
LIZZIE SMITH AND HUSBAND, LLOYD SMITH; LAULAS NEWSOME
AND HUSBAND, JOHN D. NEWSOME; MABEL COKER AND HUSBAND,
RILEY COKER; ROBERT SMITH AND WIFE, ............... SMITH; SARAH
EMMA SMITH, AVA SMITH, NORA SMITH, AND ............... SMITH, THE
LAST FOUR BEING MINORS, AND BEING REPRESENTED IN THIS ACTION by
THEIR NEXT FRIEND, J. H. B. SMITH; EDGAR GURLEY; LEAMOND
GURLEY AND WIFE, LILLIAN GURLEY; LEONARD GURLEY AND
WIFE, MAUDE GURLEY; WILLIE BURGUS GURLEY AND WIFE,
ELLEN GURLEY; ADDIE GURLEY AND TOM GURLEY, THE LAST TWO
BEING MINORS AND REPRESENTED IN THIS ACTION BY THEIR NEXT FRIEND,
J. H. B. SMITH; ADELINE PARKS AND HUSBAND, JOE P. PARKS, v.
W. G. GURLEY AND WIFE, ANNIE GURLEY; JOHN HENRY GURLEY
AND WIFE, MARGARET GURLEY; DAVID GURLEY AND WIFE, ELIZA-
BETH GURLEY; JOSEPH ISAAC GURLEY AND WIFE, CLARA MAE
GURLEY; W. B. THOMPSON, B. G. THOMPSON AND J. B. THOMPSON,
TRADING AS B. G. THOMPSON AND SONS, MORTGAGEE; AND JOHN W.
THOMPSON, TRUSTEE (ORIGINAL PARTIES DEFENDANT), AND W. G. GUR-
LEY AND JOHN HENRY GURLEY, EXECUTORS OF THE ESTATE OF MARY
GURLEY, DECEASED (ADDITIONAL PARTIES DEFENDANT).

(Filed 19 October, 1938.)

**1. Trusts § 1a—**

Express trusts are created by contract, express or implied.

**2. Trusts § 15—**

A resulting trust is created when one person's money is invested in land
and the conveyance taken in another's name.

**3. Same—**

A constructive trust arises when land is acquired through fraud, or
when, though acquired originally without fraud, it is against equity that
it should be retained by him who holds it.

**4. Same—**

Resulting and constructive trusts arise independent of any contract and
no trust or confidence is present, but the trust relation is imposed by
equity in order to work out the remedy.

**5. Limitation of Actions § 3—**

No statute of limitation runs against an express trust until the trustee
repudiates the trust with the knowledge of the *cestui*, or until demand and
refusal, or termination of the trust by death, or the trust is closed, since
until one of these contingencies occurs no cause of action rests in the
*cestui*.

**6. Limitation of Actions § 2e—**

Since occurrences which constitute a breach of an express trust amount
in effect, and usually in fact, to a breach of contract, a cause of action
for such breach is barred at the expiration of three years from such
breach. C. S., 441.

**7. Limitation of Actions § 3—**

　　An action to enforce a resulting or constructive trust is based on the original wrongful or tortious act of the person holding title, and the cause of action arises and the statute begins to run immediately the wrongful act is committed.

**8. Limitation of Actions § 2a—**

　　Since an action to enforce a resulting or constructive trust is based upon a wrongful or tortious act, the ten-year statute of limitations applies. C. S., 445.

**9. Limitation of Actions § 2a—Action held to establish express trust, and cause was barred by the three-year statute.**

　　The owner of lands devised same to his wife for life, remainder to his children and certain of his grandchildren. Some of the lands were subject to deeds of trust in favor of the same *cestui,* and some of the lands were unencumbered. The encumbered lands were sold under foreclosure, and the unencumbered lands were sold to make assets, and all the lands were purchased by or for the *cestui* in the deeds of trust. Plaintiffs, some of the heirs at law of testator, instituted this action, alleging that the purchaser bought the lands under an agreement to reconvey to the widow upon her agreement to execute a deed of trust on all the lands to secure the debt, that the purchaser refused to reconvey to the widow, and so informed her, but conveyed the lands to defendants, the remaining heirs at law of testator, who assumed the debt. It appeared from the evidence that the widow died before the institution of the action and that the lands were so conveyed to defendants almost six years prior to her death. *Held:* Taking the evidence in the light most favorable for plaintiffs, it tends to establish an express trust, and the three-year statute of limitations applies, C. S., 441, and it appearing that more than three years elapsed from the breach of the trust to the knowledge of the *cestui,* the action was properly dismissed upon defendants' plea of the statute.

**10. Equity § 2—Delay which will constitute laches depends on facts and circumstances of each particular case.**

　　The doctrine of laches is more flexible than the statute of limitations, and may bar an equitable remedy by reason of inexcusable or prejudicial delay for a period even shorter than the statutory period of limitations, and delay which will constitute laches depends on the facts and circumstances of each case, and the doctrine will apply when lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim.

**11. Same—Under facts of this case, laches of plaintiffs held bar to recovery.**

　　The owner of lands devised same to his wife for life, remainder to his children and certain grandchildren. Some of the lands were encumbered and some were unencumbered. The encumbered lands were sold under foreclosure, and the unencumbered lands were sold to make assets, and all the lands were purchased at the sales by or for the benefit of the *cestui que trust* in the encumbrances. Plaintiffs, some of the heirs at law of testator, and devisees under the widow's will, instituted this action, alleging that the purchaser at the sales bought the lands under an agreement to reconvey to the widow upon her agreement to execute a deed of trust on all the lands to secure the indebtedness, that the purchaser

refused to reconvey to the widow, and so informed her, but conveyed the lands to defendants, the remaining heirs at law. It appeared that the widow died before the institution of the action and that the lands were so conveyed to defendants almost six years prior to her death, that defendants had assumed the indebtedness, had made improvements on the lands, and had sold part of same. *Held:* The delay during which defendants had assumed and attempted to pay off the debt and had made improvements on the property to the knowledge of plaintiffs, and during which the lips of the widow, the primary beneficiary, were closed in death, constitute laches barring plaintiffs' action to set aside the sales or to set up an express trust therein.

APPEAL by plaintiffs from *Cowper, Special Judge,* at March Term, 1938, of WAYNE. Affirmed.

This is a civil action instituted by plaintiffs, heirs at law of W. M. Gurley, against the mortgagees of W. M. Gurley and certain other of his heirs at law, in which the plaintiffs seek to vacate and annul a foreclosure sale under a mortgage on the lands of the deceased and to enforce a contract alleged to have been entered into by the mortgagee to purchase the land at the sale and reconvey.

W. M. Gurley died testate, having devised all of his land to his widow, Mary Gurley, for life, with remainder, subject to the life estate, to his children and certain grandchildren. All of said children and grandchildren are parties plaintiff except W. G. Gurley, Annie Gurley, John Henry Gurley, David Gurley, and Joseph Isaac Gurley, who are parties defendant.

At the time of his· death W. M. Gurley was seized and possessed of more than 400 acres of land, consisting of a number of tracts. At that time he was indebted to the defendants B. G. Thompson and Sons in an amount in excess of $24,000. There was an outstanding mortgage to B. G. Thompson & Sons securing $24,000, and an outstanding trust deed to John W. Thompson, trustee, securing $7,000. Part of the land was unencumbered. The widow, Mary Gurley, was surety upon some of the outstanding notes.

The mortgage and the trust deed were foreclosed and Wm. B. Thompson became the purchaser. There was a proceeding to sell the unencumbered land to make assets, under which a commissioner was appointed to make sale, and this land was likewise purchased by Wm. B. Thompson. Shortly thereafter Wm. B. Thompson, at the direction of B. G. Thompson, conveyed all of said land by warranty deed to the defendants Gurley. The grantees in said deed in turn conveyed said property to secure the amount due the defendants B. G. Thompson and Sons, it having been agreed that the land was to be conveyed to said grantees in consideration of their assumption and agreement to pay the amount due B. G. Thompson & Sons by the estate of W. M. Gurley. In

purchasing said land at said sales Wm. B. Thompson acted as the agent of B. G. Thompson. All of these conveyances were made in the spring of 1931, the last one to the defendants Gurley being dated 29 April, 1931. Mary Gurley died in 1937, having left a will, in which she devised her property to her living children and to the children of such of her children as predeceased her, *per stirpes*.

At the conclusion of all the evidence, on motion of defendants, the action was dismissed as of involuntary nonsuit. The plaintiffs, other than the husbands of the *feme* plaintiffs, who had theretofore taken a voluntary nonsuit, excepted and appealed.

*J. Faison Thomson and Walter T. Britt for plaintiffs, appellants.*

*Royall, Gosney & Smith and Howard E. Manning for defendants, appellees.*

BARNHILL, J. The only exceptive assignment of error which requires consideration on this appeal is the one which challenges the correctness of the judgment of nonsuit entered on motion of the defendants at the conclusion of all the evidence.

Plaintiffs offered a number of witnesses who testified as to the alleged contract made by B. G. Thompson. Each in almost identical language testified that "he was going to sell the land as he promised he would do; he was going to bid it in at the lowest figure, and was going to deed it back to her (Mary Gurley) as he told her he would do, and let her divide it among each and all of the children." No witness for the plaintiff testified that the defendant B. G. Thompson agreed to convey the property to any person other than Mary Gurley. All testified that this was to be done so that she could divide it among each and all of her children. In that connection it is also alleged in the complaint that the property was to be bid in by B. G. Thompson and he was to hold the title to the same in trust for Mary Gurley and that Mary Gurley was thereupon to execute a mortgage or deed of trust to secure the amount due B. G. Thompson by the estate of W. M. Gurley, which deed of trust was to embrace all the lands sold by B. G. Thompson and J. B. Thompson, mortgagee, by John W. Thompson, trustee, and by Mary Gurley under the order of court.

It is unnecessary to decide whether this evidence tends to establish an express trust by contract in favor of Mary Gurley or merely amounts to a contract to purchase and reconvey. We may assume for the purposes of this decision that considered in the light most favorable to the plaintiffs it tends to show an express trust.

Shortly after the sales were had the defendant B. G. Thompson told Mrs. Gurley in the presence of the witness Parks that he was not going

to let her have the land back as he had promised her to do. Likewise, within a few days after the sales, on 29 April, 1931, Thompson actually conveyed the property to the defendants Gurley in direct violation of the alleged agreement.

It appears, therefore, from plaintiffs' evidence that the agreement to reconvey, which was in effect an agreement by Thompson to purchase as trustee for Mary Gurley, was breached in April, 1931, to the knowledge of the *cestui que trust.* Mary Gurley died in February, 1937. She lived almost six years after the known breach of the contract creating the trust relationship without taking any action. Is plaintiffs' cause of action barred by the statute of limitations—that is, does the three-year statute or the ten-year statute apply? Counsel seem to agree that this is the determinative question on this appeal.

Any seeming conflict or confusion in our decisions in applying the statute of limitations to trusts (commented on by counsel) arises only when the decisions are considered without reference to the several types of existing trusts, of which there are three: *First,* express trusts, which are created by contract, express or implied; *second,* resulting trusts, which arise when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. Under such circumstances equity creates a trust in favor of such other person commensurate with his interest in the subject matter. A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is a mere creature of equity. And *third,* constructive trusts, which are such as are raised by equity in respect to property which has been acquired by fraud, or where though acquired originally without fraud, it is against equity that it should be retained by him who holds it. This type of trust likewise arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust and is generally thrust on the trustee for the purpose of working out the remedy. The relief in such cases is predicated on fraud and not on trust. Equity declares the trust in order that it may lay its hands on the thing and wrest it from the possession of the wrongdoer.

Strictly speaking, resulting trusts and constructive trusts are not trusts, but equity imposes a trust relation because morality, justice, conscience and fair dealing demand that the relation be established. In neither does the relation of trustee and *cestui que trust* actually exist for the element of trust and confidence is absent. The holder of the legal title is declared to be a trustee on equitable principles by reason of some tortious or wrongful act of his.

1. Where there is an express trust based on contract, express or im-. plied, the statute of limitations has no application and no length of time is a bar unless and until there has been (1) a repudiation or disavowal of the trust, or (2) a demand and refusal, or (3) the trust has been terminated by death, or (4) has been closed.   17 R. C. L., 708, and numerous authorities cited in notes.   The reason for the rule is that the possession of the trustee is presumed to be the possession of the *cestui que trust*.   As long as the relation of trustee and *cestui que trust* is admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, no refusal on demand to comply with the terms of the trust, and no repudiation or disavowal of the trust, no cause of action rests in the *cestui que trust*.   The cause of action arises when and only when there has been some assertion of adverse claim or ownership, or a refusal to comply upon demand, or a disavowal or repudiation of the trust.   Perry on Trusts and Trustees, 7th Ed., Vol. 2, page 1468, etc. Bogert on Trusts and Trustees, Vol. 4, page 2758, etc.   *Hinton v. Gilbert,* 70 A. L. R., 1192; *Cavanaugh Bros. Horse Co. v. Gaston,* 47 A. L. R., 1; 17 R. C. L., 708; *Edwards v. University,* 21 N. C., 325; *Bradsher v. Hightower,* 118 N. C., 399, 24 S. E., 120; *Lowder v. Hathcock,* 150 N. C., 438, 64 S. E., 194; *Hospital v. Nicholson,* 190 N. C., 119, 129 S. E., 149; *Efird v. Sikes,* 206 N. C., 560, 174 S. E., 513; *Bacon v. Reeves,* 160 U. S., 107; *Coxe v. Carson,* 169 N. C., 132, 85 S. E., 224, in which it is said that the statute begins to run when the trust is closed or when the trustee disavows the trust with the knowledge of the *cestui que trust,* or holds adversely to the claim of those he represents.   If a trustee repudiates a trust by clear or unequivocal acts or words and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust* in such manner that he is called upon to assert his rights the statute will begin to run from the time that such knowledge is brought home to the *cestui que trust* and he will be completely barred at the end of the statutory period.

In such instances the breach of the trust is in effect and, usually, in fact a breach of contract, express or implied.   Actions thereon are necessarily based on the contract and the breach thereof.   This being true, C. S., 441, applies and the right of action is barred at the expiration of three years after such breach, repudiation or disavowal.   *Robertson v. Dunn,* 87 N. C., 191; *Edwards v. University,* 21 N. C., 325; *Dunn v. Dunn,* 137 N. C., 533, 50 S. E., 212; *County Board v. State Board,* 107 N. C., 367, 12 S. E., 452; *House v. Arnold,* 122 N. C., 220, 29 S. E., 334; *Davis v. Doggett,* 212 N. C., 589.

2. Actions to enforce constructive or resulting trusts are based on the original wrongful or tortious act of the person holding title, by reason

of which equity impresses a trust upon his title. No contract relation exists. A cause of action arises when the wrong is committed. Therefore, the statute of limitations immediately begins to run and the ten-year statute applies, unless sooner barred under the doctrine of laches. C. S., 445.

None of the decisions cited by the plaintiffs are in conflict with the views herein expressed. In *Ritchie v. Fowler,* 132 N. C., 788, 44 S. E., 616; *McAden v. Palmer,* 140 N. C., 258, 52 S. E., 1034; and *Norcum v. Savage,* 140 N. C., 472, 53 S. E., 289, constructive trusts were under consideration. In *Gentry v. Gentry,* 187 N. C., 29, 121 S. E., 188; *Sexton v. Farrington,* 185 N. C., 339, 117 S. E., 172; *Marshall v. Hammock,* 195 N. C., 498, 142 S. E., 776; and *Miller v. Miller,* 200 N. C., 458, 157 S. E., 604, resulting trusts are discussed. The decisions in *Rouse v. Rouse,* 176 N. C., 171, 96 S. E., 986, and in *Latham v. Latham,* 184 N. C., 55, 113 S. E., 623, are based on laches. In the latter case, which deals with an active trust which had become passive by the death of the *cestui que trust,* it is stated that the action would be barred at most within ten years. However, some thirty years had expired since the trust became passive. *Spence v. Pottery Co.,* 185 N. C., 218, 117 S. E., 32, was an action to reform a deed for mistake of the draftsman. In *Cunningham v. Long,* 186 N. C., 526, 120 S. E., 81, the statute of limitations was not pleaded and the court held that there was no evidence of unreasonable delay.

Whether courts of equity apply a limitation upon actions in obedience to the statute or by analogy is of little importance, for courts of equity have their own rule of laches which is much more flexible than the statute of limitations and is usually applied to bar equitable rights and remedies when there has been unreasonable, inexcusable and prejudicial delay, equal to and even less than the statutory period of limitations. *Patterson v. Hewitt,* 195 U. S., 309; *Hammond v. Hopkins,* 143 U. S., 224; *Sawyer v. Cook,* 188 Mass., 163, 74 N. E., 356; Perry on Trusts and Trustees, Seventh Ed., Vol. 2, page 1457. In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case. Whenever the delay is mere neglect to seek a known remedy or to assert a known right, which the defendant has denied, and is without reasonable excuse, the courts are strongly inclined to treat it as fatal to the plaintiff's remedy in equity, even though much less than the statutory period of limitations, if an injury would otherwise be done to the defendant by reason of the plaintiff's delay. Thus, where the property has greatly increased in value, especially if through the efforts of the

defendant, unexplained delay of a very short time may be laches.   This
is likewise true where the defendant's means of proving his side of the
case has been materially weakened by the lapse of time, as, for example,
by reason of the death of parties, loss of evidence, change of title, inter-
vention of equities, or otherwise.   *Hammond v. Hopkins, supra;* Perry
on Trusts and Trustees, *supra,* page 148, and cases noted.

We are prone to hold, therefore, that irrespective of the statute of
limitations the *laches* of the plaintiffs is such as to bar any recovery in
this action.   They waited for approximately six years after the trust
was disavowed and after the property had been conveyed by the alleged
trustee and until after the lips of the primary beneficiary were closed in
death.   In the meantime, one of the plaintiffs and her husband lived on
the property for a period as tenants.   During the full time all the plain-
tiffs were in a position to know that the defendants Gurley were making
improvements upon the property, had conveyed a part of it and were
undertaking to pay off the debt originally created by the ancestor of the
plaintiffs.   And yet, to this day neither the original beneficiary nor the
plaintiffs have offered to comply with their part of the contract, but have
consistently acquiesced in the ownership of the defendants Gurley.
Under such circumstances one whose *laches* is so pronounced cannot
successfully seek relief in a court of equity.   *Jones v. Stewart,* 212
N. C., 228.

Plaintiffs' cause of action is barred by the three-year statute of limi-
tations, C. S., 441 (1), and under the doctrine of *laches,* each of which
was duly pleaded in defense.

The judgment below is

Affirmed.