KATHERINE COCKER v. ARCHIE COCKER AND OTHERS.[1]

July 23, 1943.

No. 33,432.

*George, Owen & Brehmer,* for appellants.
*F. J. O'Brien,* for respondent.

[1] Reported in 10 N. W. (2d) 734.

LORING, JUSTICE.

This was a suit to cancel and have declared void a deed from plaintiff to her three sons, Archie, Neil, and Walter Cocker. The deed purported to convey certain lots in the city of St. Charles in Winona county and a tract of land in Fillmore county. It was alleged that the deed had been executed by the plaintiff December 11, 1930, and by her placed in her safety deposit box in the Citizens State Bank of St. Charles, but that without her authority or consent the defendants Archie and Neil, one or both, had possessed themselves of the keys to the box at a time when she was ill in the fall of 1940, had wrongfully taken the deed from the box, and on October 23, 1940, had had it recorded in Fillmore and Winona counties. In her suit the plaintiff also asked that she be adjudged the owner in fee simple of all the real estate described in the deed. The answer of Archie and Neil set up that the deed had been taken from the box with plaintiff's consent and by her authority and so recorded. The trial court found that plaintiff never delivered the deed but that it was taken from the safety deposit box without her permission or consent and thereafter recorded; that she never received any consideration for the deed; that she had never promised or agreed to convey the real estate described therein or any part thereof to the defendants or any of them; and that she was under no obligation, legal or equitable, to do so. The court concluded that plaintiff was entitled to judgment that the deed is null and void; that defendants surrender it to the clerk of court for cancellation; and that an appropriate memorandum of invalidity be noted on the margin of the records of such deed in Fillmore and Winona counties.

The case comes here upon a bill of exceptions, which presents but the single question whether the testimony of the defendant Edna M. Cocker, wife of the defendant Archie, as to a statement of Will Cocker, her father-in-law, since deceased, was properly excluded. The defendants Archie and Neil offered to prove by her that—

"in the months immediately preceding the death of Will Cocker, he called his family together, at which time there was present Edna

Cocker, said sons of the decedent, the plaintiff, Katherine Cocker, and that he stated that he had made an agreement with his wife whereby he was—he had made a deed of his real estate to her so that she might have the same—the income from the same for life and an opportunity to use the same for life, upon her express promise and agreement to execute a deed in favor of his three children and to deliver the same prior to her death and upon the condition that the children each agree with him that they would not mortgage or encumber their respective share[s] of the farm.

"This offer is made on the theory that the witness, Edna M. Cocker, is not an actual party to this action; that no cause of action is alleged against her, no affirmative relief is asked as against her; that she has not answered in said action; that she has no interest in the outcome of the action, and that being named as a party defendant without pleading a cause of action against her does not—cannot make her a party to the action so as to bar her testimony.

"The Court: It appears that she is the wife of the defendant Archie Cocker, and as such has an inchoate interest in the real estate in question and is therefore a proper party to the issue. She is named as a party defendant in the action, apparently for no other purpose than to exclude her inchoate interest.

"The offer is refused."

As early as 1852 the territorial legislature had become convinced that the common-law rule totally disqualifying parties and persons interested in the event of an action was too harsh, unjust, and unreasonable. Under the statute in force prior to 1861 (Pub. St. 1849-1858, c. 84, § 51), neither parties to actions nor persons interested in the event thereof were restricted in any manner from testifying in such actions. Evidently the experiment of abolishing *in toto* the common-law rule did not work out satisfactorily. Probably the legislature in its wisdom considered the temptation to perjury too great when the opposite party to the transaction was dead. So by L. 1861, c. 36, it was provided that where one of the original parties to a contract or cause of action was dead or shown

to be insane the other should not be admitted to testify in his own favor. To this extent the policy of the law returned to the common-law restriction against parties testifying in their own behalf. This statute was again amended and appears in the Revision of 1866 as G. S. 1866, c. 73, § 8. This amendment added an exception to the rule to provide that when all the original parties on the same side of a contract or cause of action were dead or insane the other party or parties should not be admitted to testify in their own favor, except where the transaction on the other side was had by an agent whose testimony was received. Again, by L. 1877, c. 40, G. S. 1866, c. 73, § 8, was amended (G. S. 1878, c. 73, § 8) to provide:

"It shall not be competent for any party to an action, or interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person, relative to any matter at issue between the parties."

This provision contained the meat of the present statute, Minn. St. 1941, § 595.04 (Mason St. 1927, § 9817). Chadwick v. Cornish, 26 Minn. 28, 31, 1 N. W. 55, gives a full statutory history of the rule here under consideration.

In our early cases this court was inclined to limit the exclusion provided by the statute to the strict construction placed upon the common-law rule by the courts which had recognized its harshness; and, as to witnesses whose testimony was sought to be excluded on the ground of interest, it was stated that that interest in the event of the action must be—

"some legal, certain, and immediate interest, either in the event of the cause itself, or in the record, as an instrument of evidence for or against him in some other action. The interest must be pecuniary, certain, direct, and immediate, and not an uncertain, contingent, remote, or a merely possible interest."

Perine v. Grand Lodge, 48 Minn. 82, 90, 50 N. W. 1022, 1024. That much cited case, however, involved a situation where the witness under consideration was not shown to have any interest whatever in the event of the action.

In Towle v. Sherer, 70 Minn. 312, 73 N. W. 180, the distinction between a party and a witness who was not a party but interested in the event of the action was made, and the Perine case and Madson v. Madson, 69 Minn. 37, 71 N. W. 824, were commented upon. In the Madson case it was held that a wife who was not a party could testify to a conversation with a deceased person relative to the issue to which her husband was a party. In the Towle case it was held that the wife of the defendant had an interest in the issues sufficient to make her a proper party to the action and thus render incompetent her testimony as to conversations with a deceased person relative to the issues. The court said (70 Minn. 319, 73 N. W. 181):

"* * * True, her only interest in the real estate in question is that of the inchoate statutory dower which she would have if the defendants succeeded in defeating the establishment of the alleged lost deed or deeds. But, while this interest is contingent and uncertain, it is sufficient to constitute her a proper party to the action and, being such a party, she was not competent to testify as to such conversations."

In M. & St. L. R. Co. v. Lund, 91 Minn. 45, 48, 97 N. W. 452, 453, this court held, referring to the statute of descent, G. S. 1894, § 4471:

"* * * Under this statute the wife has an interest in all lands owned by her husband, which ripens into full and absolute title at his death, unless previously relinquished by her. Unless she in some manner provided by law assents to a sale or transfer of the land by the husband, no act of his, whether by conveyance or otherwise, can deprive her of that interest * * * While she could not, perhaps, prior to the death of her husband, maintain an action to recover any part or portion of the land owned by him, her right being merely inchoate, she may defend such right and interest in an action brought against her to quiet title thereto."

It is true that the statute of descent has been amended since its appearance as § 4471 so as to make further exceptions to the real

estate in which a wife may claim her statutory dower or marital interest, but the character of her interest remains the same, so that she is a proper party defendant where the title to her husband's real estate is in issue.

In Scott v. Prudential Ins. Co. 207 Minn. 131, 135, 290 N. W. 431, 433, this court, in construing the statute prohibiting parties or persons interested in the event of an action from testifying to conversations with deceased persons, disapproved of the strict construction of the earlier cases and held that the statute was entitled to "a fair and reasonable construction to accomplish its purpose—to make it work to the full extent intended by the legislature." In that case we referred with approval to the language of Mr. Justice Mitchell in Kells v. Webster, 71 Minn. 276, at page 281, 73 N. W. 962, 964, where it was said:

"There is another fact worthy of consideration. The common-law rule that persons interested in the event of the action were not competent witnesses was unreasonable and unjust, and was therefore long looked upon with disfavor by the courts, and, as a consequence, they were constantly striving to cut it down by construction, or evade it as far as possible. But the provision in our statute, which is limited to conversations with or admissions of a deceased or insane person who is incapable of testifying in his own behalf, is founded on the plainest principles of common justice and fair play, and, so far from being cut down or evaded by construction, ought to be favored and liberally construed, so as to effect the purpose of its enactment."

In Tatum v. Roberts, 59 Minn. 52, 58, 60 N. W. 848, 850, which was a suit to set aside a fraudulent conveyance, the wife of the alleged fraudulent grantee was held to be "at least a proper party. She is interested in the subject-matter, because, in case of the death of her husband, she would have become the owner of one-third thereof."

We therefore hold that defendant Edna M. Cocker was a proper party defendant in this action and that she had such an interest in

the issue presented to the court that under the statute as such party she was incompetent to testify as to a conversation with or statement by the deceased Will Cocker.

The only question left for consideration is whether or not she ceased to be such a party to the issue by her default in failing to answer. On this point we are disposed to agree with the trial court that such a construction of the law would defeat the statute, which, as we have held before, should be liberally construed to effect its salutary purpose. It was never intended that a party could qualify herself to testify against a plaintiff by admitting the allegations of the complaint and so enable her husband to use her testimony to support a contention distinctly in her interest.

Regardless of whether Edna Cocker is still a party, we think she had an interest in the event of the issue to which her husband was a party. Should he prevail, she would immediately have an inchoate interest in the property described in the deed. Tatum v. Roberts, *supra*. That interest is, of course, technically contingent upon her husband predeceasing her; but, as a practical matter, she has a direct interest in her husband's prosperity and benefits by it. If temptation to perjury is a consideration to be weighed in determining the legislative purpose, we conceive that her temptation in that regard is as great as his. As said in State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry Co. 190 Minn. 162, 165, 251 N. W. 275, 277, in discussing a statute which in part at least superseded the common law:

"* * * Our single duty of the moment is to ascertain legislative design and give it scope over the whole of its intended field. The boundaries of that area are not to be artificially narrowed by judicial or other predisposition toward common law concepts. Survey must be of the metes and bounds of the statute, others *in pari materia,* and the remaining applicable principles, if any, of the common law. However radical the change, a statute inaugurating new policy 'should have a fair construction, with the purpose of its enactment in view, not narrowed or restricted because it is a substitute for the discarded common law.'"

Our early cases were perhaps too ready to accept the convenient measure of a party in interest which had been laid down under the superseded common law. We think that the purpose of the statute now under consideration did not contemplate a revival of the narrow construction given the harsh common-law rule, and we think that a liberal construction, giving full effect to the beneficent purpose of its enactment, as suggested by Mr. Justice Mitchell, in Kells v. Webster, 71 Minn. 276, 281, 73 N. W. 962, *supra,* should be adopted. Either as a party or as a person interested in the event of the issue between plaintiff and Archie, we feel that it was the legislative intent to bar Edna's testimony. Any expressions in our former opinions to the contrary are overruled.

Order affirmed.

Mr. Justice Magney, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.