### CASHMAN v. MASON et al.

#### Civ. No. 1942.

District Court, D. Minnesota, Fourth Division.

April 7, 1947.

G. W. Horsley, of Springfield, Ill., and Rudolph E. Low, of St. Paul, Minn., for plaintiff.

C. E. Warner, of Minneapolis, Minn., for defendant Ellsworth Mason.

Grant W. Anderson, of Minneapolis, Minn., for defendant Northwestern National Bank & Trust Co. of Minneapolis.

NORDBYE, District Judge.

The plaintiff, Edith Cashman, was formerly Edith Cole, and is a niece of Mrs. A. W. Ross, who is now deceased. In June, 1941, plaintiff was living in Illinois, where she was employed as a stenographer. She came to Minneapolis to spend her vacation and while here visited her aunt, Mrs. Ross. There is evidence that at about that time Mrs. Ross told a public accountant, a Mr. Foley, who looked after her income tax matters, that she was going to have her bank accounts placed in the joint names of herself and the plaintiff in that she did not have any heirs and wanted to make her niece her "heir apparent". At that time Mrs. Ross had on deposit $1,048.13 in her savings and her checking account reflected a balance of $11,654.67. On July 12, 1941, Mrs. Ross and the plaintiff went to the defendant bank to open accounts in their joint names. The savings account was transferred from the name of Mrs. A. W.

Ross to a joint account in the name of "Mrs. A. W. Ross or Edith M. Cole." The signature card signed by both parties contained the following agreement: "The funds deposited in this account are the joint property of the undersigned, and the bank may discharge its obligation for the same by payment to or upon the written order of either, or to the survivor of the undersigned without reference to the ownership of the funds deposited."

The checking account was likewise transferred from the name of Mrs. A. W. Ross to a joint account in the name of "Mrs. A. W. Ross or Edith M. Cole." The signature card contained in part the following statement: "All funds now or hereafter deposited in said account by either or any of the depositors shall be the property of the depositors jointly with the right of survivorship. Each depositor shall have complete and absolute authority over said account during the joint lives of the depositors and may withdraw all or any part of such funds on checks or other withdrawal orders signed by either or any of the depositors and by the survivor or survivors in case of death of any thereof."

After the accounts were opened as indicated, plaintiff went back to Illinois and continued in her position as a stenographer. From time to time thereafter, Mrs. Ross made substantial deposits in both accounts and substantial withdrawals from the checking account. In January of 1942, or thereabouts, plaintiff came to Minneapolis and lived at the Ross home. Later that year she was employed by a concern in Minneapolis of which Mrs. Ross was the controlling stockholder. Plaintiff signed a few checks on the joint checking account, but, so far as the evidence indicates, these checks were payment of bills incurred by Mrs. Ross and were all signed "Mrs. A. W. Ross by Edith M. Cole." Apparently no withdrawals were made on the savings account during the time the account was in the name of Mrs. Ross and the plaintiff. Furthermore, it appears that at all times Mrs. Ross had possession of the passbooks for both accounts.

It is to be gathered from the evidence that some friction arose between Mrs. Ross and the plaintiff, and in January, 1943, the plaintiff left the home of Mrs. Ross and never returned to live with her again. In April, 1943, plaintiff resigned her position with the business concern which Mrs. Ross controlled and returned to her home in Illinois. Thereafter, Mrs. Ross and the plaintiff may have met on one or two occasions, but their relationship was most casual.

On September 30, 1943, Mrs. Ross went to the defendant bank and made arrangements to change the title of the joint checking account which at that time was in the name of herself and this plaintiff. Although the original change order which Mrs. Ross signed and delivered to the bank has been destroyed, the evidence indicates that it was in the following form:

"Order to Change Title of Account "N. W. 555

"You are instructed to change the title of the account now carried on your books as: Mrs. A. W. Ross or Edith M. Cole to Mrs. A. W. Ross or Ellsworth Mason.

"All outstanding checks drawn as against the account as formerly carried are to be charged against the present account."

Ellsworth Mason is a brother of Mrs. A. W. Ross, and at the time the accounts were changed he was residing in Peoria, Illinois. In accordance with the order signed by Mrs. Ross, the checking account was changed by the bank as requested and was carried thereafter as changed until Mrs. Ross' death on May 9, 1945. At the same time that the checking account was changed, Mrs. Ross executed a savings withdrawal slip withdrawing the entire balance in the joint savings account of herself and Edith M. Cole in the sum of $10,-958.06 and redeposited the same to a new savings account which she opened in the name of "Mrs. A. W. Ross or Ellsworth Mason."

On September 30, 1943, the joint checking account reflected a balance of $6,339.95. Withdrawals were made thereafter on this account and one deposit of $3,000 was made by Mrs. Ross before her death. This $3,000 was deposited on February 10, 1945, and represents a withdrawal from the joint savings account of Mrs. Ross and Ells-

worth Mason, and was deposited in the checking account so as to enable Mrs. Ross to have sufficient funds to draw a check in the sum of $3,880 which was apparently due the concern in which she was a majority stockholder by reason of the fact that she, Mrs. Ross, had been paid an excess salary and the Government required the restoration of this money for income tax purposes. Consequently, of the funds on deposit when the checking account was carried in the name of Mrs. Ross and this plaintiff, there remained in this account only the sum of $822.41 at the time of Mrs. Ross' death. As stated, there was a balance of $10,958.06 in the savings account at the time the new account was opened in the names of Mrs. Ross and Mr. Mason, and at the time of Mrs. Ross' death the balance in this account had been increased by deposits made by Mrs. Ross to the sum of $20,819.71. The balances in the checking and savings accounts were withdrawn by Mr. Mason shortly after Mrs. Ross' death on May 9, 1945.

Plaintiff brings this action to recover the sum of $6,339.95 and the sum of $10,958.06, the balances in the joint checking and savings accounts respectively on September 30, 1943, on the theory that, when these accounts were opened, a gift inter vivos was made from Mrs. Ross as donor to the plaintiff as donee, and that at that time a present interest was vested in Edith M. Cole and such interest could not be revoked by any subsequent act on the part of Mrs. Ross. Apparently the bank's liability is predicated on the theory that, with knowledge of the two joint accounts as reflected in its records, it wrongfully permitted the withdrawal of these funds by Mrs. Ross in that it permitted her to have both accounts transferred from the joint names of herself and the plaintiff to herself and Ellsworth Mason. The Minnesota statute which should be considered in passing upon the questions submitted provides, Section 48.30, Minnesota Statutes 1945 and M.S.A.: " * * * When any deposit shall be made by or in the names of two or more persons upon joint and several account, the same, or any part thereof, and the dividends or interest thereon, may be paid to either of these persons or to a survivor of them, or

to a personal representative of the survivor."

It is suggested, but not decided, that this statute was passed primarily for the protection of banks in making payments on joint accounts. McLeod v. Hennepin County Savings Bank, 145 Minn. 299, 176 N.W. 987. In view of the fact that the joint account was terminated before Mrs. Ross' death, the statute probably has no other significance in this controversy. See 12 Minn.Law Review, pp. 285, 286.

A reading of the Minnesota cases would indicate that joint deposits such as we have here between plaintiff and Mrs. Ross may constitute a gift and are governed by the rules applicable to gifts. McLeod v. Hennepin County Savings Bank, supra. But obviously each case must be decided on its own facts, and the question is therefore presented whether Mrs. Ross made these deposits with the intention of making a gift, or whether she made this arrangement merely for her own convenience or to serve some purpose of her own. Dyste v. Farmers & Mechanics Savings Bank, 179 Minn. 430, 434, 229 N.W. 865. In order to have a gift inter vivos, the gift must be in præsenti. If it was a gift to take effect on the death of the donor, with the control and recall remaining with the donor, there is no executed gift inter vivos. McLeod v. Hennepin County Savings Bank, supra. Moreover, if the donor merely intended to arrange a form of testamentary disposition, the plan would not only be ineffective as a testament, but could be withdrawn at any time at the behest of the donor.

Mrs. Ross was an elderly widow with no children. She was in ill health and subject to periodical sick spells. In the early part of 1942 she suffered a stroke and was incapacitated for some time. It is fair to assume from the evidence that she wanted some one to live with her and to aid her in looking after her affairs, and, as Mr. Foley testified in summarizing the conversation between him and Mrs. Ross, she, Mrs. Ross, was going to take "Edith Cole in from there on, and Edith was going to be her, I would say, heir apparent." In pursuance of that arrangement, Edith Cole

did come to live with Mrs. Ross and arrangements were made so that she apparently did part of the housework but was not required to pay anything for board and room. She also obtained a rather lucrative position with the concern of which Mrs. Ross was the majority stockholder, in that when she resigned her position there in April, 1943, she was earning $100 a week. There is no real controversy over the fact that all the moneys in both accounts belonged to Mrs. Ross. Plaintiff did claim in her testimony that when she commenced to earn $100 a week she gave part of it to her aunt to put "in this—into our bank account." But this seems highly improbable. She did not assume to designate any certain deposits, or into which account any moneys may have been deposited or the time thereof, nor did she give any estimate of the amounts. Moreover, she testified that in April, 1942, after she began to work in Minneapolis, she opened an account with the defendant bank for herself and her mother. It was a joint account, and she testified that she deposited some of her money in that account. The few checks which plaintiff did draw on the joint account held by herself and Mrs. Ross would indicate, not only from the type of bills which were being paid, but also from the manner in which the checks were signed, that plaintiff did not assume that she had any present ownership in the funds in the checking account.

The fact that joint accounts were opened by an aunt and a niece under the circumstances herein is not conclusive that a present gift was intended to the plaintiff. The recitals in the deposit agreements that the funds in the bank accounts were the joint property of the codepositors reflect the form presumably used by the bank for its own protection in honoring withdrawal orders signed by either of the depositors. The bank must recognize the parties as joint owners in order to justify the honoring of withdrawals by either party of any part or all of the funds deposited. Such recitals would be required even though the joint accounts were solely maintained for the convenience and purposes of the owner of the funds with the right of recall retained. In McLeod v. Hennepin County Savings Bank, supra, the following statement was signed by the joint depositors on the books of the bank, page 300 of 145 Minn., page 987 of 176 N.W.: "This account is our joint property, and is payable on the individual receipt of either of us, and in case of death of either, to the survivor." But the court therein merely concluded that the joint form of deposit was but one of the factors to be considered in determining whether there was a donative intent, stating at page 301 of 145 Minn., at page 988 of 176 N.W.: "The finding of intent does not rest alone upon the joint form of the deposit." Where, during the existence of the joint deposits and during the lives of the depositors, the owner of the funds exercises her claimed right of recall by cancelling the arrangement between the parties, the rights of the parties to the funds in the joint accounts should be determined by the realities of ownership, not merely by the form of the deposit. Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870 (Judge Cardozo's concurring opinion); Esling v. City Nat. Bank & Trust Co. of Battle Creek, 278 Mich. 571, 270 N.W. 791.

■ It is reasonable to find from the evidence that all Mrs. Ross intended was to have her accounts placed in the joint names of herself and niece for her own personal convenience, and then upon her death to provide an expedient method of having her niece become the owner of whatever funds may have remained. Moreover, this view is entirely consistent with that which later occurred. The arrangement between the parties in living together did not prove satisfactory. Mrs. Ross was ill from time to time and plaintiff's health was poor, and this situation, in part, at least, led to a misunderstanding between them, and in January, 1943, plaintiff removed all of her personal belongings from her aunt's home and later returned to Illinois. After she left, plaintiff had nothing further to do with either of the joint bank accounts and she did not evidence any contention that she had any interest in the accounts until some six months after Mrs. Ross' death. Outside of opening the two joint accounts, Mrs. Ross never indicated any intention to make any present gift of the money to her niece. Early in 1943 she said to one of her neigh-

bors that she could not understand why the plaintiff had left her in January, 1943, and that she was going to fix her things so that Edith would not get anything. This she apparently did.

In honoring withdrawals made by Mrs. Ross from the savings account, the bank simply recognized the joint deposit agreement which provided that "the bank may discharge its obligation for the same by payment to or upon the written order of either." So far as the checking account was concerned, while Mrs. Ross did not formally draw a check for the balance and open a new account, the result was the same. The deposit agreement covering the checking account provided that "Each depositor shall have complete and absolute authority over said account during the joint lives of the depositors and may withdraw all or any part of such funds on checks or other withdrawal orders." The notice of the change in the title of the account signed by Mrs. Ross was tantamount to a withdrawal by "other withdrawal orders." Mrs. Ross had had the same account in the defendant bank for many years and it was in pursuance of her order that Edith M. Cole's name was added in the first instance and that later her name was cancelled and Ellsworth Mason's name substituted therefor. The bank had no notice of any circumstances which would indicate that plaintiff claimed any vested present interest in the deposits which could not be recalled. Plaintiff served no notice on the bank not to honor Mrs. Ross' withdrawal orders. The Minnesota statute referred to, Section 48.30, protected the bank in making a part or all of the payments to any one of the named joint depositors. Dyste v. Farmers & Mechanics Savings Bank, supra. Undoubtedly the statute must mean that each one of the persons named has absolute control over the account in so far as withdrawals are concerned. No distinction can be made between the absolute right of each depositor to draw out part of the deposit and the right to draw out the entire amount, either by a formal withdrawal order or other means of transferring the joint account to one depositor, especially where the withdrawing depositor is the sole contributor to the joint account. It is true that the de-

cisions indicate that a presumption arises upon death of one of the depositors that the residue in the bank account is the absolute property of the survivor and "casts upon those who claim otherwise the burden of proving that such was not the intention of the donor." Dyste v. Farmers & Mechanics Savings Bank, supra, 179 Minn. at page 435, 229 N.W. at page 867. But, under the facts herein, no such presumption arises as against the bank prior to the death of one of the depositors. In any event, if Mrs. Ross retained the right of recall and there was no present gift to plaintiff, it must follow that there is no liability on the part of the bank in honoring Mrs. Ross' withdrawals and orders with respect to the accounts. The burden of proof rests on plaintiff to establish a present gift to her.

Joint accounts are a common method of handling funds in a bank as between husband and wife and others for mutual convenience and economy, but without necessarily intending to bestow any present interest in the fund on the one who is joined for the convenience of the owner of the moneys deposited. There is an absence of any satisfactory or convincing facts or circumstances which would indicate that there was any intention on the part of Mrs. Ross to make a present gift of the deposits to plaintiff. Outside of making the joint deposit, every act of Mrs. Ross during her lifetime, as well as the acts and conduct of the plaintiff, would indicate the contrary. The changing of the accounts in September, 1943, is at least some evidence that Mrs. Ross did not understand that she had made an irrevocable gift. The testimony of Mr. Foley that the plaintiff was to be Mrs. Ross' "heir apparent" is more consistent with an arrangement whereby no present interest passed to plaintiff, but upon Mrs. Ross' death if she survived she would by force of the statute have a right to withdraw the balance of the deposit. Not until then would there be any presumption of absolute ownership of the funds. But, as stated in McLeod v. Hennepin County Savings Bank, supra, her knowledge that the survivor would succeed to the title of the entire fund "is not of controlling force upon the question of her intent to make a present gift, for it is consistent with a re-

tention of the right of recall and a testamentary disposition." At page 303 of 145 Minn., at page 988 of 176 N.W. A discussion of the problems arising under joint deposits in the various jurisdictions will be found in the annotations in 48 A.L.R. 189; 66 A.L.R. 881; 103 A.L.R. 1123; 149 A.L.R. 879. See also 4 Minnesota Law Review 72, 537; 12 Minnesota Law Review 285.

 Plaintiff did testify that when she went with Mrs. Ross to the bank on July 12, 1941, and opened up the two accounts in their joint names, Mrs. Ross stated to an official of the defendant bank that "she wished to give me an interest in her bank account." This testimony was objected to on the part of defendant Mason and the objection was sustained. It was thought, however, by counsel that the conversation was probably competent as to the bank because it was had in the presence of an official of the bank. While the testimony is of doubtful probative value in establishing a present gift, in that it is obvious that plaintiff would have to have, so to speak, an interest in the bank account if she was to be permitted to draw checks thereon, the Court is convinced that, under Section 595.04, Minnesota Statutes 1945, and M.S.A., this testimony which assumes to give conversation with, or admissions of, a deceased person by a party in interest is not competent. The statute reads: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."

Any question as to the competency of testimony as to conversations with, or admissions of, a deceased person by a party in interest, even though the conversation was had in presence of and with the party who is now one of the adverse parties to the action, is set at rest by Sievers v. Sievers, 1933, 189 Minn. 576, 250 N.W. 574. That case clearly holds that a conversation such as that referred to herein is not admissible. See also Cocker v. Cocker, 1943, 215 Minn. 565, 10 N.W.2d 734.

The Court concludes, therefore, that plaintiff has failed to sustain the burden of proof that a present gift was intended by Mrs. Ross when she opened the two bank accounts naming herself and plaintiff as joint depositors; that Mrs. Ross at all times retained the right of recall and the only interest she intended to vest in the plaintiff was the right to withdraw funds as the deposit agreement provided, and, if she had not exercised her right to recall prior thereto, the right which would arise in the event plaintiff survived her. Moreover, in changing the two accounts at the behest of Mrs. Ross, the bank acted in pursuance of the deposit agreement signed by the parties and in pursuance of the statutory authority evidenced by Section 48.30, Minnesota Statutes 1945, and M.S.A.

Findings of fact and conclusions of law in harmony herewith may be presented by the defendants. An exception is reserved to the plaintiff.